IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  **NOVEMBER 4, 2015**

**NO. 32,824**

**BAC HOME LOANS SERVICING LP,**
**f/k/a COUNTRYWIDE HOME LOANS**
**SERVICING LP,**

Plaintiff-Appellee,

v.

**STEPHEN R. SMITH,**

Defendant-Appellant,

and

**SARAH H. SMITH, COMERICA-BANK**
**TEXAS and OCCUPANTS WHOSE TRUE**
**NAMES ARE UNKNOWN,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Weinstein & Riley, P.S.
Jason C. Bousliman
Albuquerque, NM

for Appellee

William N. Griffin
Ruidoso, NM

for Appellant

Stephen R. Smith
Austin, TX

Pro Se Appellant

**OPINION**

**ZAMORA, Judge.**

{1}     Stephen Smith (Homeowner), appeals from an award of summary judgment in favor of BAC Home Loans Servicing, LP (BAC), which orders a foreclosure sale. On appeal, Homeowner argues that the district court erred in granting summary judgment where BAC failed to establish its standing to foreclose and where BAC failed to provide adequate notice of and opportunity to cure the default. Homeowner also argues that the district court erred in granting summary judgment on his counterclaims. Because BAC failed to establish that it had standing to foreclose when it filed its complaint for foreclosure, we reverse.

**BACKGROUND**

{2}     On February 24, 2003, Homeowner signed a promissory note with First Magnus Financial Corporation (First Magnus). As security for the loan, Homeowner signed a mortgage contract with Mortgage Electronic Registration Systems (MERS), as the nominee for First Magnus, pledging the home as collateral for the loan. On July 17, 2009, BAC filed a complaint for foreclosure against Homeowner. BAC attached to its complaint an unindorsed copy of the note, along with an unrecorded assignment of Homeowner's mortgage, showing that MERS assigned the mortgage to BAC on July 6, 2009.

{3} Homeowner filed an answer to the complaint, asserted affirmative defenses, and filed counterclaims. Homeowner alleged, *inter alia*, that BAC failed to establish its ownership of the note and mortgage. BAC moved for summary judgment and produced the affidavit of Colleen Newsome, an officer of Bank of America, which stated that, according to Bank of America business records, BAC was the holder of Homeowner's note. The affidavit was dated June 26, 2012.

{4} On December 17, 2012, Homeowner filed an exhibit list with attached exhibits, including two copies of the note and two assignments of mortgage. One copy of the note was indorsed as follows: from First Magnus to GMAC Bank, from GMAC Bank to GMAC Mortgage Corporation, from GMAC Mortgage Corporation to Witmer Funding LLC, and indorsed in blank from Witmer Funding LLC. None of the indorsements were dated. One of the assignments of mortgage appears to be a recorded copy of the assignment provided with the Bank's foreclosure complaint, assigning the mortgage from MERS to BAC. The first assignment was recorded with the Lincoln County clerk on July 22, 2009. The second assignment showed that the mortgage was assigned from First Magnus to Bank of America on April 3, 2012. That assignment was recorded on April 11, 2012.

{5} On January 15, 2013, the district court held a hearing on BAC's motion for summary judgment. BAC's counsel advised the court that she was in possession of

the original note, indorsed in blank, which could be submitted to the court and inspected by Homeowner. The original note was submitted to the court on January 23, 2013. The district court found that BAC had standing to enforce the note and mortgage and summary judgment was granted. This appeal followed.

**DISCUSSION**

{6}    On appeal, Homeowner argues that the district court erred in granting summary judgment because BAC failed to prove its standing to foreclose. Homeowner also argues that summary judgment was improper where BAC failed to show that it provided notice and an opportunity to cure the default, and that the district court erred in granting summary judgment on his counterclaims. Because we hold that BAC lacked standing to foreclose and reverse on that basis, we need not address Homeowner's remaining arguments.

**Standard of Review**

{7}    "We review the district court's decision to grant summary judgment de novo." *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 14, 143 N.M. 142, 173 P.3d 749. Summary judgment is appropriate where the facts are undisputed "and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). New Mexico courts disfavor summary judgment and prefer a trial on the merits. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d

280. When we review the granting of summary judgment, we make all reasonable inferences from the record in favor of the nonmoving party. *T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, ¶ 19, 340 P.3d 1277, *cert. granted*, 2014-NMCERT-012, 344 P.3d 988. Whether a party has standing to bring a claim is a legal question, which we also review de novo. *Disabled Am. Veterans v. Lakeside Veterans Club, Inc.*, 2011-NMCA-099, ¶ 9, 150 N.M. 569, 263 P.3d 911.

**Standing to Foreclose**

{8}    In foreclosure actions, standing is a jurisdictional prerequisite. *See Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶¶ 15, 17, 320 P.3d 1 ("[L]ack of standing is a potential jurisdictional defect . . . standing [is] a jurisdictional prerequisite for a statutory cause of action" (alteration, internal quotation marks, and citation omitted)). A party filing for foreclosure is "required to demonstrate under New Mexico's Uniform Commercial Code (UCC) that it had standing to bring a foreclosure action at the time it filed suit." *Id.* ¶ 17. In order to establish its standing to foreclose, a plaintiff must demonstrate that it had the right to enforce the note and the right to foreclose the mortgage at the time the complaint for foreclosure was filed. *Id.* Because the right to enforce the mortgage arises from the right to enforce the note, the question of standing turns on whether the plaintiff has established timely ownership of the note. *Id.* ¶¶ 17, 35.

4

{9} Under the UCC, a promissory note is a negotiable instrument, NMSA 1978, § 55-3-104(a), (b), (e) (1992), which can be enforced by a third party who is a holder of the instrument. NMSA 1978, § 55-3-301 (1992); *Romero*, 2014-NMSC-007, ¶ 20 (same). A third party in possession of the note can enforce a negotiable instrument as a holder if the note is either indorsed specifically to the third party, or indorsed in blank, not specifying a person or entity to which the note is indorsed. *See* NMSA 1978, § 55-1-201(b)(21)(A) (2005) (stating that a holder is a person in possession of a negotiable instrument payable: (1) to bearer, or (2) to an identified person, and who is that person); *see also* § 55-1-201(b)(5) (identifying bearer paper as a negotiable instrument that has an indorsement in blank).

{10} In this case, BAC alleged that it was the holder of the note, attaching to its complaint an unindorsed copy of the note and an assignment of mortgage assigning Homeowner's mortgage from MERS to BAC. Neither document is sufficient to establish BAC as the holder of the note. "Possession of an unindorsed note made payable to a third party does not establish the right of enforcement, just as finding a lost check made payable to a particular party does not allow the finder to cash it." *Romero*, 2014-NMSC-007, ¶ 23. There is no legal authority allowing the assignment of a mortgage to carry with it the transfer of a note. A plaintiff who has not

established the right to enforce the note cannot foreclose the mortgage, even if the evidence shows that the mortgage was assigned to the plaintiff. *Id.* ¶¶ 34-35.

{11}     The record does contain a copy of the note that has a blank indorsement. As we noted previously, under the UCC, possession of a note indorsed in blank ordinarily establishes the right of a third party as the holder of that note. NMSA 1978, § 55-3-205(b) (1992) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); Section 55-3-104(a)(1), (b), (e) (defining "negotiable instrument" as including a "note" made "payable to bearer or to order" (internal quotation marks omitted)); Section 55-3-301 (defining "[p]erson entitled to enforce" a negotiable instrument (internal quotation marks omitted)); *Romero*, 2014-NMSC-007, ¶ 26 ("[The] blank indorsement . . . established the [b]ank as a holder because the [b]ank [was] in possession of bearer paper[.]"). However, the record does not show that BAC at any time possessed this indorsed note. A copy of the indorsed note was produced by Homeowner with his exhibit list, and it is not clear how or when Homeowner came to possess it. And while BAC's trial counsel advised the court that she was in possession of the original note, indorsed in blank, at the summary judgment hearing, the original note submitted to the district court on January 23, 2013, does not include

6

an indorsement page or provide any evidence of when BAC or its counsel obtained possession of the original note.

{12}     As noted earlier, BAC produced the affidavit of Colleen Newsome in support of its motion for summary judgment. The affidavit, executed nearly three years after BAC filed its complaint, states that BAC is the holder of the note. However, the affidavit does not state that Newsome had personal knowledge that the note was transferred to BAC prior to the filing of the foreclosure complaint. *See* Rule 11-602 NMRA ("A witness [or affiant] may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Newsome's purported basis of knowledge regarding the ownership of the note is her review of the note as part of Bank of America's business records and her personal knowledge of Bank of America's procedures for creating business records. While the affidavit states that a copy of the reviewed "business record" is attached, no attachment appears in the record. The record also does not indicate that any such business record was offered or admitted as a hearsay exception for business records. *See* Rule 11-803(6) NMRA (naming this category of hearsay exceptions as "[r]ecords of a regularly conducted activity"); *see also Romero*, 2014-NMSC-007, ¶¶ 31-32 (holding that a witness's testimony and a witness's affidavit were insufficient to

establish the transfer of the note because the witnesses lacked personal knowledge of the note's transfer, and that a witness's reliance on a review of the business records was also insufficient to establish the note's transfer without a specific business record having been offered and admitted under the business records exception to the hearsay rule). An additional concern with the Newsome affidavit is that it did not include the note indorsed in blank as part of the business record. Thus, the affidavit is also insufficient to establish BAC's timely ownership of the note at the time its complaint was filed in July 2009. We conclude that BAC did not present the evidence necessary to demonstrate it had standing to enforce the note at the time of its complaint.

**BAC's Arguments in Support of Affirmance**

{13}     In support of affirmance, BAC argues that our decisions in *Deutsche Bank National Trust Co. v. Beneficial New Mexico Inc.*, 2014-NMCA-090, 335 P.3d 217, *cert. granted sub nom. Deutsche Bank v. Johnston*, 2014-NMCERT-008, 334 P.3d 425, and *Bank of New York Mellon v. Lopes*, 2014-NMCA-097, 336 P.3d 443, set out new "impermissible" procedural requirements for the filing of foreclosure complaints that should not be applied retroactively to this case. This argument is unavailing.

{14}     According to BAC, our holdings in *Deutsche Bank* and *Lopes* have created a new rule: that a third party filing for foreclosure must produce a copy of the indorsed

note with its complaint, and cannot later correct deficiencies or offer substantiating documentation. BAC has misconstrued the holdings of those cases.

{15} In *Romero*, our Supreme Court held that standing in foreclosure actions is a jurisdictional prerequisite that must be established at the time the suit is filed, by demonstrating timely ownership of the note and mortgage. 2014-NMSC-007, ¶¶ 15-17. In *Deutsche Bank*, this Court applied *Romero*'s holding where the plaintiff attempted to establish timely ownership of the note by producing a copy of the note, with an undated, blank indorsement, after the filing of the complaint. *Deutsche Bank*, 2014-NMCA-090, ¶ 13. We concluded that "the blank indorsement on the note the [b]ank introduced at trial was not dated, making it impossible to tell when the indorsement was executed. Therefore, while the indorsed note was sufficient to show that the [b]ank was the holder of the note at the time of trial, it failed to show that the [b]ank was the holder at the time it filed its complaint for foreclosure." *Id.* Similarly, in *Lopes*, we held that "[n]either the [b]ank's attachment of a copy of [the] note, indorsed in blank, to its September 22, 2011[,] pleading nor its production of that note at the summary judgment hearing on July 17, 2012[,] established the [b]ank's standing to bring the suit for foreclosure against [the h]omeowner on July 6, 2011[,] . . . [as] in *Deutsche Bank*, the [b]ank's failure to establish that it had the right to enforce [the] note as of the date the complaint for foreclosure was filed constitutes a

9

failure to establish the [b]ank's standing to bring the suit and a jurisdictional defect." *Lopes*, 2014-NMCA-097, ¶ 12.

**{16}** BAC argues that *Deutsche Bank* and *Lopes* should not apply retroactively. Notably, it does not include *Romero* in that argument. We reject BAC's argument for two reasons. First, in order to overcome the presumption of retroactive application, a decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 27, 149 N.M. 162, 245 P.3d 1214 (internal quotation marks and citation omitted). Neither *Deutsche Bank* nor *Lopes* established a new principle of law, or reached resolutions that were not foreshadowed. *See Romero*, 2014-NMSC-007, ¶ 17 (stating that "[a] plaintiff has no foundation in law or fact to foreclose upon a mortgage in which the plaintiff has no legal or equitable interest. One reason for such a requirement is simple: [o]ne who is not a party to a contract cannot maintain a suit upon it. If the entity was a successor in interest to a party on the contract, it was incumbent upon it to prove this to the court." (alterations, internal quotation marks, and citation omitted)). Second, because the copies of the note produced by BAC were not indorsed, our decisions in *Deutsche Bank* and *Lopes* are not applicable here.

10

To the extent that BAC claims that it satisfied the standing requirements under *Romero*, we have concluded that it did not.

**CONCLUSION**

{17}     For the foregoing reasons, we reverse and remand for proceedings consistent with this Opinion.

{18}     **IT IS SO ORDERED.**

 

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge**